## In re CLIMAX CHEMICAL COMPANY, Debtor.

**Bankruptcy No. 11–92–10939 MR.**

United States Bankruptcy Court, D. New Mexico.

Feb. 2, 1994.

James A. Askew, Albuquerque, NM, for the Estate Adm'r.

### ORDER ON APPLICATION FOR PAYMENT OF ADMINIS-TRATIVE CLAIMS

MARK B. McFEELEY, Chief Judge.

This matter came before this Court on Application for Payment of Administrative Claims filed by Union Pacific Railroad Company and Missouri Pacific Railroad Company (collectively, the "Railroads") asking this

Court to approve payment of certain post-petition lease rental and freight charges totalling $35,980.00 as administrative expenses, under Bankruptcy Code § 503(b)(1)(A).[1] The Debtor's Estate Administrator filed an objection to the Application. In his brief, the Estate Administrator conceded that the sum of $1,516.84 for lease payments is a valid administrative expense and the Court will allow it as such. The objection stands as to the remaining $34,463.96 in freight charges. The Estate Administrator has stipulated that the freight services were rendered in the ordinary course of the Debtor's business. The Estate Administrator maintains, however, that the law in this District requires that creditors show that the Debtor induced them to provide goods and services post-petition with an agreement to allow their claims administrative expense priority. *See e.g., In re Glover*, 43 B.R. 322, 325 (Bankr.D.N.M.1984) (holding that post-petition creditors must show that debtor promised administrative expense priority in order to claim such priority). Since there is no evidence that the Railroads were so induced, the Estate Administrator argues, they are not entitled to retroactive administrative priority.

Section 503(b)(1)(A) provides in relevant part as follows:

After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;[2]

 Recently, the Tenth Circuit adopted the majority rule for determining administrative expense priority as follows:

To be deemed an administrative expense, the expense must: (1) arise out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession; and (2) benefit the debtor-in-possession in the operation of the business.

*In re Mid Region Petroleum, Inc.*, 1 F.3d 1130, 1132 (10th Cir.1993) (quoting, *In re Amarex, Inc.*, 853 F.2d 1526, 1530 (10th Cir. 1988)).[3] The Tenth Circuit did not require the creditor to show that the debtor offered administrative expense priority as an inducement to provide the post-petition credit.[4] This Court recognizes that the Debtor can offer § 503(b)(1) priority under § 364(a), as an inducement to extend post-petition credit. But a creditor can also prove entitlement to the priority position under § 503(b)(1)(A) if it shows that the expense arises out of a transaction with the debtor and the expense benefits the debtor-in-possession in the operation of its business. *Id.* This benefit must be real and arise from the transaction for which

1. Of that total, $1,516.84 represents charges incurred under leases entered into by the Railroads and the Debtor after the filing of the bankruptcy petition. The balance of the charges, $34,346.96 relates to transportation services provided by the Railroads to the Debtor, also after its bankruptcy filing.

2. The Debtor's First Amended Plan of Reorganization tracks this language in its definition of Administrative Claims:

any actual and necessary expenses of ... operating the Debtor's business, including loans or other advances to the Debtor in Possession.... Plan at p. 2.

3. *See also, In re Buyer's Club Markets, Inc.*, 5 F.3d 455, 457 (10th Cir.1993) (severance pay claims that vested upon conversion from Chapter 11 to Chapter 7 were not in the ordinary course of debtor's business and could not be afforded administrative expense priority).

4. *See, In re TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir.1992) (a prima facie case under § 503(b)(1)(A) may be established by evidence that the claim arises from a transaction with the Debtor; and the goods or services supplied enhanced the ability of the Debtor's business to function as a going concern (two-part test); *Trustees of Amalgamated Ins. Fund v. McFarlin's*, 789 F.2d 98, 101 (2d Cir. 1986) (two-part test); *In re Pauling Auto Supply, Inc.*, 158 B.R. 789, 793 (Bankr.N.D.Iowa 1993) (to be accorded administrative status, the expense must be actual and necessary; it must arise from a transaction with the debtor-in-possession; it must benefit the debtor in its business operation); *In re Coastal Carriers Corp.*, 128 B.R. 400, 403 (Bankr.D.Md.1991) (two-part test); *See also, In re Photo Promotion Associates, Inc.*, 87 B.R. 835, 840 (Bankr.D.N.J.1988) (even if creditor is not induced under § 364(a) to extend unsecured credit to the debtor, this does not preclude creditor from asserting an administrative priority claim for the actual and necessary expenses under § 503(b)(1)).

the claim is filed. *Mid Region*, 1 F.3d at 1133.[5]

The policy behind giving priority to administrative expenses in Chapter 11 proceedings is to encourage creditors to supply necessary resources to debtors post-petition. *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 891, 897 (Bankr.E.D.Pa.1987). When creditors supply these resources, the Debtor is allowed to operate its business for the benefit of pre-petition creditors and to attempt to effectuate a successful reorganization. *In re TransAmerican Natural Gas Corp.*, 978 F.2d at 1415.

Previous cases in this district can be distinguished. In *Glover*, the bank had inadvertently extended credit to the debtor post-petition by failing to dishonor checks written by the debtor, who had failed to transfer funds covering the checks as agreed. The court required the creditor to show that § 503(b)(1) was used as a bargaining chip to induce the bank to extend post-petition credit under § 364(a). The Railroads' claims are for services actually rendered to the Debtor that benefitted the estate, and these types of claims are separately provided for in § 503(b)(1). In *In re Woodland Corp.*, 48 B.R. 623 (Bankr.D.N.M.1985), the court considered a utility's request for administrative priority for post-petition electrical service provided to the debtor. The court noted that § 366 provides special protection from utility suppliers who have a monopoly for their services. *Id.* at 624. Section 366 also authorizes utilities to negotiate with the debtor for adequate assurance of payment, which may be a guarantee of administrative priority or a deposit as in the *Woodland* case. The deposit in *Woodland* became inadequate, and instead of cutting off service, the utility voluntarily continued to provide service beyond the deposit amount and argued later that it should be afforded administrative priority for the necessary services it provided. The court disallowed this claim because, given the special protection afforded by § 366, administrative expense priority is inappropriate un-

less it was promised as adequate assurance. By contrast, the Railroads, as suppliers of necessary services, can seek administrative priority under § 503(b)(1) or attempt to negotiate priority under § 364. To the extent that *Glover* and *Woodland* contradict the Tenth Circuit holdings in *Amarex, Mid Region,* and *Buyer's Club,* this Court cannot apply the rule of these previous decisions to this issue.

With the Tenth Circuit standard in mind, this Court finds, as stipulated by the Estate Administrator, that the freight services supplied by the Railroads benefitted the estate by facilitating the operation of the Debtor's business. Therefore, the Railroads are entitled to administrative priority under § 503(b)(1).

IT IS ORDERED that the Railroads are granted an administrative expense claim of $35,980.00 consisting of lease charges of $1,516.84 and freight charges of $34,463.96.

**5.** Citing *Broadcast Corp. v. Broadfoot,* 54 B.R. 606, 611–13 (N.D.Ga.1985) (to be granted administrative expense status, the bankruptcy estate must benefit from the use of the creditor's property), *aff'd sub nom., In re Subscription Television of Greater Atlanta,* 789 F.2d 1530 (11th Cir.1986).